IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No. 25-CR-00464-GKF |
| EDYN AGUILAR LARA, | ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter comes before the court on the Motion to Dismiss for Lack of Jurisdiction [Doc. 16] of defendant Edyn Aguilar Lara. For the reasons set forth below, the motion is denied.

**I.     Background/Procedural History**

On December 15, 2025, a federal grand jury returned an indictment charging Mr. Aguilar Lara with one count of Possession of Methamphetamine with Intent to Distribute pursuant to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and one count of Maintaining a Drug-Involved Premises pursuant to 21 U.S.C. §§ 856(a)(1) and 856(b). [Doc. 12].

Mr. Aguilar Lara now seeks to dismiss the Indictment, arguing that, because he is in the United States unlawfully from Honduras, he is not "subject to the jurisdiction of the United States" and this court lacks jurisdiction. [Doc. 16]. The government responded in opposition. [Doc. 18].

**II.     Analysis**

Pursuant to federal law, "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. The Tenth Circuit has stated "in every federal criminal prosecution [subject-matter jurisdiction] comes from 18 U.S.C. § 3231, . . . That's the beginning and the end of the 'jurisdictional' inquiry." *United States v. Tony*, 637 F.3d 1153, 1158 (10th Cir. 2011)

(quoting *United States v. White Horse,* 316 F.3d 769, 772 (8th Cir. 2003)).

Further, "the '[l]aws of the United States apply to all persons within its borders.'" *United States v. Burton*, 856 F. App'x 173, 175 (10th Cir. 2021) (unpublished) (quoting *United States v. James,* 328 F.3d 953, 954 (7th Cir. 2003)).[1]  Thus, persons within the United States "owe temporary and local allegiance" to American law and are "amenable to the jurisdiction of the country" for violation of same.  *United States v. Wong Kim Ark*, 169 U.S. 649, 685-86 (1898); *see also James*, 328 F.3d at 954 (aliens, including those here unlawfully, are "obliged to respect the laws of this nation"); *United States v. Lee-El*, No. 08-20140-01-KHV, 2009 WL 4508565, at *1 (D. Kan. Nov. 24, 2009) ("Even if defendant is an alien under United States law, he must obey the laws of the United States.").

Here, the Indictment alleges that, while in the United States—specifically, the Northern District of Oklahoma—Mr. Aguilar Lara violated the laws of the United States—specifically, Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C) and 856(a)(1) and (b). [Doc. 12].  Thus, this court has subject matter jurisdiction.  *See* 18 U.S.C. § 3231; *Wong Kim Ark*, 169 U.S. at 685-86; *Burton,* 856 F. App'x at 175.

Mr. Aguilar Lara argues that President Donald J. Trump has defined "subject to the jurisdiction" to exclude persons in the country unlawfully and, in so doing, has effectively consented to "surrender jurisdiction to punish offenses" and "prioritized the detention and removal of illegal aliens over prosecution."  [Doc. 16, pp. 13-14].  However, as previously stated, the court's subject matter jurisdiction is statutory and enumerated in § 3231 to include "all offenses

---

[1] "Unpublished decisions are not precedential but may be cited for their persuasive value." 10th Cir. R. 32.1(A).

against the laws of the United States."[2]  18 U.S.C. § 3231.  In practical effect, Mr. Aguilar Lara's position would limit the scope of this court's statutory jurisdiction.  "There is no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes." *Clinton v. City of New York*, 524 U.S. 417, 438 (1998).[3]  Moreover, this court is bound to follow the Supreme Court's direction that persons within the United States "owe temporary and local allegiance" to American law and are "amenable to the jurisdiction of the country" for violation of same.[4] *Wong Kim Ark*, 169 U.S. at 685-86; *see also Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996).

Mr. Aguilar Lara also points to previously recognized "classes of cases"—grounded in English common law—in which persons are not fully subject to United States law. *See Wong Kim Ark*, 169 U.S. at 682, 684 (recognizing exceptions for foreign sovereigns and ministers, persons on foreign public ships, invading armies, and members of Indian tribes).  Specifically, Mr. Aguilar Lara contends that, based on recent Executive Orders, unlawful aliens are "analogous" to an invading army.  [Doc. 16, p. 14].  The Supreme Court has recognized that

> [i]f an army marching through a friendly country would thus be exempt from its civil and criminal jurisdiction, *a fortiori* would an army invading an enemy's country be exempt.  The fact that war is waged between two countries negatives the possibility of jurisdiction being exercised by the tribunals of the one country over persons engaged in the military service of the other for offences committed while in such service.

---

[2] Further, if adopted, Mr. Aguilar Lara's position would effectively repeal statutes that explicitly provide criminal penalties for offenses committed by unlawful aliens.  *See* 8 U.S.C. § 1326; 18 U.S.C. § 922(d)(5).

[3] In this regard, the court notes the distinction between the President's authority to decline to prosecute certain offenses or persons as a matter of policy, and the court's subject matter jurisdiction over the offenses or persons.

[4] Although Mr. Aguilar Lara argues that *Wong Kim Ark* should be read as imposing a rule that "in order to be subject to the jurisdiction of the United States, an alien must not owe an allegiance to a foreign power and must be domiciled in the United States with the permission to remain," [Doc. 16, p. 11], he offers no binding authority interpreting the decision in that manner nor has the court identified any.  Thus, the court applies the language of the decision as written.

*Coleman v. Tennessee,* 97 U.S. 509, 516 (1878); *see also Dow v. Johnson*, 100 U.S. 158 (1879). However, here, there has been no declaration of war and, further, Mr. Aguilar Lara has not demonstrated that he (or other unlawful aliens) are "in the military service" of another country. Mr. Aguilar Lara cites no caselaw applying the exception outside the context of persons engaged in military service during a declared war, nor has the court identified any. *Cf. Al Shimari v. CACI Int'l, Inc*. 679 F.3d 205, 216-17 (4th Cir. 2012) (questioning the "continued relevance" of *Coleman* and *Dow* "beyond their immediate context"). Thus, the "invading army" exception is inapplicable.

Mr. Aguilar Lara also argues that "[t]he government should be blocked from opposing this motion by judicial estoppel" because, in the birthright citizen litigation, the government has "taken the position that illegal aliens are not 'subject to the jurisdiction' of the United States" but a different division of the Department of Justice has taken an alleged "opposing position[]" that the government may criminally prosecute illegal aliens. *See* [Doc. 16, pp. 17-19]. Pursuant to the judicial estoppel rule, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee,* 156 U.S. 680, 689 (1895)). Although "the circumstances under which a court might invoke judicial estoppel will vary, three factors 'typically inform the decision whether to apply the doctrine in a particular case.'" *Eastman v. Union Pac. R.R. Co*., 493 F.3d 1151, 1156 (10th Cir. 2007) (quoting *New Hampshire,* 532 U.S. at 750). The Tenth Circuit has articulated the factors as follows:

> First, a party's subsequent position must be "clearly inconsistent" with its former position. Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the

> perception that either the first or the second court was misled[.]" Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.

*Eastman,* 493 F.3d at 1156 (internal citations omitted) (quoting *New Hampshire*, 532 U.S. at 750-51).

The court having reviewed the government's briefs in the birthright citizenship cases, plaintiff has consistently taken the position that "political jurisdiction" is distinct from "regulatory" jurisdiction. Further, in the Executive Orders cited by Mr. Aguilar Lara, President Trump directs that the Attorney General "prioritize the prosecution of criminal offenses related to the unauthorized entry or continued unauthorized presence of aliens in the United States," [Doc. 16-4, p. 2], as well as the "prosecution of offenses that relate to the borders of the United States, including the investigation and prosecution of offenses that involve human smuggling, human trafficking, child trafficking, and sex trafficking in the United States," [Doc. 16-5, pp. 2-3]. Further, in Executive Order 14165, the President states that it is the policy of the United States to "[p]ursu[e] criminal charges against illegal aliens who violate the immigration laws." [Doc. 16-5, p. 1]. Thus, Mr. Aguilar Lara has not demonstrated that the government's position that it retains criminal jurisdiction to prosecute illegal aliens is "clearly inconsistent." Nor has Mr. Aguilar Lara shown that the government has "succeeded in persuading a court to accept [its] former position." *Eastman,* 493 F.3d at 1156. Finally, the government has taken a legal position, but "the position to be estopped must generally be one of fact rather than of law or legal theory." *United States v. Villagrana-Flores*, 467 F.3d 1269, 1278 (10th Cir. 2006) (quoting *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005)). For all of these reasons, judicial estoppel is inapplicable.

Finally, Mr. Aguilar Lara asserts that the court lacks personal jurisdiction over him. However, "[i]t is well settled that a district court has personal jurisdiction over any party who

appears before it, regardless of how his appearance was obtained." *United States v. Lussier,* 929 F.2d 25, 27 (1st Cir. 1991); *see also Wilkin v. United States,* No. 05-CR-53-TS, 2007 WL 2317426, at *2 n.14 (D. Utah Aug. 7, 2007). Mr. Aguilar was arrested and has appeared before this court. [Doc. 5; Doc. 17]. Thus, this court has personal jurisdiction and Mr. Aguilar Lara's motion to dismiss in this regard must be denied.

### III.   Conclusion

WHEREFORE, the Motion to Dismiss for Lack of Jurisdiction [Doc. 16] of defendant Edyn Aguilar Lara is denied.

IT IS SO ORDERED this 16th day of January, 2026.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE